324-0675 Tomax Tree Services, LLC and TJ Real Estate, LLC, Appellants v. Village of Westmont and Village of Westmont Administrative Code Hearing System, Appelese Alright Mr. Daniel, if you're ready you may proceed. Good morning everyone. May it please the court. My name is Mark Daniel with Daniel Law Office. I represent Tomax Tree Service, TJ Real Estate, and Tom Jung in a matter involving property at 108 East Chicago Avenue in Westmont. The property has been in existence since the 1950s. It has since that period always hosted a small building on the east side, a large yard for most of the west part of the property, and businesses that have had large vehicles. Those businesses falling in a category of what we refer to in the brief as contractor shops. There are a few dates I want to point out to you. 1979, the Village of Westmont had a zoning ordinance. During the course of the hearing, we could not identify the official zoning ordinance, and we used a copy that one of the former mayors of the village happened to keep in his files, even though we did not have the certified copy from the clerk. Under the 1979 zoning ordinance, contractors' shops were a permitted use. A permitted use is one that is allowed as a matter of right in the zoning category at issue. Contractors' shops were permitted. As far as the permitted use is concerned, that began to change as far as the useless are concerned. In 1982, the Village of Westmont adopted an ordinance amending the use lists for the B2 district, which is what we're dealing with here. If you can imagine a use list, it's 70 uses that are on a table, and there are columns. In each column, there's B1, B2, and maybe another district or two. In this case, it was just B1 and B2. The 1982 amendment amended only the B1 uses. Again, we're in the B2 district. After that 1982 amendment, contractors' shops simply fell out of the use lists for the B2 district. Again, it's a B1 amendment. In the course of that amendment, the B2 district use changed as it was published, so contractors' shops were no longer reflected as a permitted use. From 1982 forward, even though there was no amendment under the Illinois Municipal Code, Section 11-13-14 requires that you have an amendment, an ordinance to amend the use lists. Our position that we've stated on appeal is that from 1979 forward, because there was no amendment to the B2 use list that eliminated contractors' shops, contractors' shops are still permitted. Mr. Daniel, let me ask you a question, please. There's another case that you have pending right now, which is 2023-MR-386, which is actually still pending in DuPage County. In that case, you allege that Tomax's procedural due process rights have been violated for failure to provide notice. Can you tell me what impact that has on this appeal? Justice Davenport, on this appeal, we are addressing the substance of the zoning ordinance and the retroactive or prospective effect of an amendment of an ordinance that occurred during the hearing that is before you on appeal. There's a section of the ordinance, Section 12.02-G2. That ordinance said at one point in time, up until the amendment that's challenged in that 23-MR case that you just referenced, it said that if you have a non-conforming use in Westmont, and that use is a principal use, you can convert that non-conforming use to a permitted use in the district. And if you have an accessory use, again, principal use is the main use of the property, the accessory use is your parking, your storage, waste operations, something that's servicing the principal use. Section 12.02-G2 also protected accessory uses. In this case, it's relevant to consideration of the allegation that we are parking trucks that are too heavy, I'm sorry, that have too much capacity, and that we're engaged in outdoor storage. Let me ask you then, tell me, how do you determine capacity if it's not, in fact, related to weight? I don't know how, Judge. There are so many definitions of capacity. Capacity could mean any of three or four things. Is it the capacity of an engine to pull weight? Is it the capacity of a truck to haul anything? If I have a semi truck that is fully loaded with equipment that is fixed to the flatbed inside the semi, is there capacity in that truck that remains available? Are you measuring that capacity? Is it the capacity of the weight plus the trailer? It's undefined, and we cite a number of cases. Bode, I think, is one of them where Illinois courts have recognized that capacity has multiple definitions, and when it's not defined with specificity, in those instances, you have difficulty because the term is vague. Well, I'm looking at 7.02D for capacity. So tell me, in fact, what your position is with regard to the violations alleged with regard to capacity. Our position is that if you look at the trucks, the trucks have certain plates on them, and the plates were the basis for the evidence in the case, the license plates. In Illinois, there's a classification system based on weight, gross vehicle weight. It's been that way since the 1930s. They proved the license plate classification, and they did not prove anything related to capacity. They just proved the license plate classification and said, because we have a certain plate in a certain classification, our weight is this. Therefore, you must find that the capacity has been violated. Could you define gross vehicle weight as it's used for licensing purposes? For licensing purposes, I believe it is the total weight of the vehicle. It's not the manufacturer's specification. It's the ability of the vehicle to carry a total load that includes the cab and the trailer. Okay, but it doesn't address. Okay, gross vehicle weight is allegedly the maximum weight that this particular vehicle can safely. Carrie, is that what you're trying to say? No, gross vehicle weight is the burden of the vehicle, the total burden of the vehicle on the highways. Okay, without anything on it. No, it's it includes what it can carry. Okay, so it's what it can carry. In other words, gross vehicle weight is the weight. Without anything on it. And then the manufacturer says. If you put something on it, this is the maximum I can carry. Correct. Yes, I believe that is the case. Yes, common sense, normal language. Okay, let's define it. Okay. So, you've got the weight on the scales of an empty loaded. Vehicle, and then you've got a manufacturer saying that. That plus the max, we think that vehicle can carry is gross vehicle weight. I believe so. Yes, I think you're correct on that. Okay, so capacity is what you're trying to say. Is not the same as. As weight. Correct, because you could have a gross vehicle weight license truck. But you could be carrying feathers. You could be yes, or you could have open space that you cannot store anything in because which instance feathers is different than coal. Right. Feathers are different than coal. And in this case, we have wood chips. For example, if Tomax goes out and cuts down limbs from a tree and chips up the wood. There's a lot of vacant space between those wood chips and a lot of capacity. That won't have any designated way to sign to it because of all the gaps between the wood chips. Okay, that's where I was trying to get at. Yeah. And you're saying then that Westmont, in fact, was really just basing their decisions on on the license plate. Or the license only not anything else. There's no other proof in the record other than the license plate classification. But can I ask you to go back and tell me how the cases you didn't answer my initial question, which is how these 2 cases are going to affect each other. All right, I was going to try to get back. Nice try. Thank you. So 12.02 G2. Would allow us to continue. The historical parking of trucks that are over capacity, even if the weight classification for the plates applied, let's assume that that is proof of a capacity violation. Those trucks had been on site since the 1950s. We went back the record has aerial photographs showing that. A demolition company named blocker brothers, it was an excavation and demolition company operated at the property with large trucks with capacity. That was certainly in excess of ours. The big haul. The big haulers, these guys built out most of the West suburbs. And they hold a lot of soil out of sites and. Demolition waste, then we had spunder metals, which was a recycling and metal repurposing. Operation, and they had large trucks and trailers. We moved in in 2018 when spunder was still operating. Tomax had large trucks with these license plates. That's a continuation of an accessory use and under the express provisions of 12.02 G2. We could continue those, even though the principle use changed. From spunder to us, and during the course of the hearing. On this, the citation was filed, I believe in the fall. In February, we may have had our 1st hearing status. And initiated the work towards developing the record and as we're developing our brief. For the administrative hearing officer in July. I look online at the code and I say, oh, my goodness, I can't copy and paste 12.02 G2 that changed. They deleted the section that gave us our nonconforming use defense for the accessory use. By way of an amendment. And that challenge that case that you refer to. Challenges that process. There is no possible way that it's constitutional under Pasolino versus city of Zion. To amend an ordinance. Without providing notice to somebody that you're actually in an administrative hearing with. And that ordinance is taking away their nonconforming accessory use defense. So, we, we actually had a foothold. We could assume that the plate classification determines capacity. And under 12.02 G2 end up in a position where we're protected anyway. I'd like to address the capacity issue in relation to storage as well. It ties to 1 element of the case, a multiplicity of charges. On on these accessory uses, we're either parking or storage. They're mutually exclusive under the Westmont zoning ordinance. You cannot say that we're parking vehicles in excess of 1 and a half tons in capacity. If the activity is storage. You cannot say that we're storing if the activity is parking. So, you can have 50,000 dollars in fines on each of those now on the. Conforming use side, the principal use side. Westmont's ordinance very clearly. Today, as the legislative record was proven at hearing. Still has contractors shops in the useless for the B2 district. Contractor shops is a broad category. It includes electricians. It includes people that. Like Tomax that come out and they suspend themselves from trees to engage in what is a hazardous activity of cutting tree limbs. As far as plumbers and remodelers deck builders. Painters, those are all contractor shops. In the village of Westmont, the other use that was added to the B2 district. Was known as contractors retail shops. And the preamble to the B1 and B2 districts in the Westmont code. Recognizes that retail. Contemplates retail of goods and retail of services. I retail services. Someone who sells a widget retails goods. And services and goods retailers are both permitted in the B2 district. Tomax would qualify as a contractor's retail shop as well. Because of a service, because it's selling a service from the property. Yes. Another important date here, once we get beyond 2000, I'm sorry, 1982 was the amendment to the B1 district that caused the B2 used to fall off the list. Essentially, I look at that as a major Scrivener's error. But in 2018, we moved to the property. We're operating for 2 years. In 2020, Westmont adopts another amendment. And Westmont amends the code. To create in districts, other than the B2 district, a classification called. Landscape contractors offices. And you'll see in the record, there are plenty of statements that we are a landscapers contractors office in writing. But as the testimony bears out, they didn't see mowers. They didn't see the pesticides or sprays or any of the hand tremors that landscape contractors offices have. And in that instance, you carve out a small category. And that category is excluded from the useless. It doesn't take out. The people that are contractor shops that are not engaged in landscape services, like Tomax. And even then, because we were there for 2 years, we had a use established. I see that my time is running. There is a lot on the plate. I know we'll have an opportunity in rebuttal to continue serving food off that plate. Justice Holder, Justice Davenport, any additional questions this time? Mr. Daniel, you will have that opportunity on rebuttal. Thank you. My name is John. I represent the defendant appellee in this matter. And if it may please the court, I'd like to start by emphasizing that in considering this case and the various arguments and defenses raised by the plaintiff. There are a few principles that I respectfully request the court keeps in mind. First, the court should not defer to the plaintiff's interpretation of a municipality's zoning ordinance. Nor should the court impose its own interpretation of a municipality's zoning ordinance. Instead, the court must give substantial weight and deference to the defendant's own interpretation of its ordinances. Because the defendant is charged with enforcing that ordinance, and it's able to make informed judgments on its own ordinances based on its experience and expertise. In order to disregard how the defendant in this case interpreted its ordinances, it's a very high bar to clear. This court would have to find that the defendant's interpretation of its own ordinances were clearly erroneous, arbitrary, or unreasonable. And I don't think this court is able to make that finding in this case as to any of the issues. The hearing officer did not make that finding. The circuit court did not make that finding. And I don't think there's any basis for doing so. When there's a fair room for difference, when the plaintiff makes an argument that you say, yeah, that makes some sense, I could buy into that. And the defendant makes an argument that is also reasonable as to what an ordinance states or means or how to interpret it. The court must defer to the defendant's interpretation of its own ordinance. And then lastly, there's a lot of factual disputes here. And some of the decision making involved making determinations of fact by the hearing officer. And in those cases, those determinations by the hearing officer have to be upheld unless an opposite conclusion is clearly apparent. And I guess the standard is all reasonable people would find that an opposite conclusion is clearly apparent. And again, I don't think this court could reach that. Well, you're really talking about interpretations of manifest way to the evidence. The standard. Yes, I'm referring to the courts are all over the board with everybody has to agree it's unreasonable and blah, blah, blah, blah, blah. You know, we don't even really know anymore what that means. Fair enough. Let me move on then and I'm going to focus my arguments on responding to the various defenses and theories raised by the plaintiff in this case. The first violation was a violation of section 7.02 B of the zoning ordinance. And that ordinance requires that all business operations must be conducted within a completely enclosed building. And the defenses raised by the plaintiff are that one, the property is completely fenced. Therefore, its operations are enclosed. But that's not enclosure within a completely enclosed building. Next, plaintiff asserts that it's outdoor storage operations of large commercial vehicles and equipment constitutes off street parking. And in order to make that argument, defendant relies on dictionary definitions, but ignores article 10, which regulates off street parking and states that off street parking spaces are reserved and can be only used by. I believe it says automobiles for patrons, guests, and employees of the business on the property. Mr. Zemanek, let me ask you then to go into that a little bit under 7.02 B, a boy and D versus dog. Can you tell me the difference, please, what your analysis is on that, the difference between those two? Yes, 7.02 B refers to all operations of a business that they must be inside. A building. A fully enclosed building 7 storage issue, right? In this case, the violation was the outdoor storage. Correct. Okay. And then 7.02 D says that if you. It's it doesn't constitute proper off street parking. If you are storing a commercial vehicle in excess of a certain capacity for more than 1 hour, that doesn't constitute parking that constitutes illegal storage. So, admittedly, these 2 provisions are related. 1's a little more specific, referring to what constitutes parking versus storage that the parking if it's less than if a vehicle is less than. 1 and a half tons of capacity, and it can be parked there. So, it could be the same vehicle could be okay for a period of time. And then once a period of time lapsed, it could be then illegal under the villages code. 1 hour got it. Thank you. You're welcome going back to then. I don't believe when you look at the clear language of. The off street parking regulations that this overnight storage of commercial vehicles constitutes proper off street parking. That's just based on the clear language of the ordinance. Defendant then argues well, if we're not fully enclosed due to the fence, or we're not off street parking, then we constitute proper loading. We're using a loading space by storing our vehicles here. And again, you go to article 10 of the zoning ordinance. What constitutes loading loading spaces are to be used by businesses that receive merchandise or ship out merchandise. It's for trucks that come in and out for that purpose. And it expressly says that loading spaces cannot be used for storage of vehicles or merchandise, etc. So, clearly, this storage use cannot be determined to be loading. I think 7.02 be the language is clear on its face. The hearing officer didn't need to interpret it simply because the plaintiff in this case comes up with theories arguing that it's. Here's how plaintiff interprets it doesn't make it somehow vague or unclear, or that we need to resort to extrinsic evidence. We think that violation was easily proved. Can you tell me please why the village amended the ordinance on March 23rd, deleting the 12.02 G2. Why, you know, as to why that's not part of the record. So we're restricted to the record on appeal. Okay, you're aware that the other lawsuit is pending at this time. Yes. Okay. And what is a party to that? And that got that did away with 1 of the defenses. Correct. Incorrect. Okay. Pardon me. So, with all due respect. No, quite right. Go ahead. Despite the fact that this amendment occurred during the course of the hearing near the tail end of that hearing the village, the defendant never once informed the hearing officer of that amendment. That amendment was never presented as evidence during the administrative hearing. The defendant never argued in its closing argument brief or otherwise to the hearing officer that it should apply or was required to apply the amended section 12 article 12 regarding nonconforming uses. In fact, when council reached out to me and said, this was amended, I said, attorney Daniel, we are not attempting to have the amended ordinance applied to this case. The ordinance that applies is the ordinance that was in force on the date. The citation was issued and I argued that in my brief to this court. I argued it to the hearing officer. I argued it to the circuit court at all those previous 2 levels. This was not an issue. I think this is a red herring raised by Mr. Daniel to so confusion in this case. If I may move on then to the, the use violation of section 7.03. Defending claims that this use is not a permitted or special use in the B2 district. The B2 district, there are over 130 very specific uses in the use table, and you'd have to go to exhibit N of the plaintiff defendants exhibit N, which is the zoning ordinance. Go to section 7.03 see this comprehensive list of very specific businesses. A tree service business is not listed as a permitted use, or a special use, and the defendant determined that its use was not allowed in the B2 district. The deputy director of the community development department who testified for the defendant on this issue is a certified land planner. He's charged with enforcing and interpreting the zoning ordinance. He testified that if a specific use is not listed, it is not allowed. He did say that if there is a similar use listed, he could make a reasonable interpretation that a use is so similar to another use that is listed that it could be allowed. But in this case, it was his opinion that there is no other use listed that is similar to a tree service business. When asked, he said the closest thing would probably be a landscaper's contractor's office, but that's not allowed in the B2 district. He specifically said that this use, in his opinion, does not constitute a contractor's shop or a contractor's retail shop. And again, the hearing officer agreed with defendants. What was his rationale for that? Well, his rationale was, one, based on Illinois court decisions that state that if a use is not specifically listed in an ordinance or in a state statute, it is expressly, or it is deemed excluded. Oh, we know the law. I'm talking about the factual thing. You got an expert there saying, ah, the closest this thing is, is to a landscaper. Okay. But it's not a contract. Okay. So, he's giving the next allegedly put him on for an expert opinion. Am I correct? He's making a. Yeah, if you want to call him an expert on the subject, he is charged with interpreting the zoning ordinance. Yeah, I mean, he presented his credentials. He's a certified planner and all, and he makes these decisions. That's 1 of those functions. He's certified to do that. That's pretty much talking about an expert, isn't it? Sure, the basis for his determination was. In applications to the village. It deals with trees. There are photos that were introduced into evidence about plaintiff planting trees as part of its business operations. So, it was his reasonable determination that it's not a contractor shot. It is more akin to a landscape contractor, which is not allowed in this zoning district. Okay, thank you. So that's part of it. The, there's an argument that I will admit, I find a little bit confusing and as to whether this, you should be allowed that. The plaintiff makes, and that is that this is a legislative special use pursuant to section 4.01 B3 of the zoning ordinance that says if a use. Pre existed the 1979 zoning ordinance and has continued. And that because of that, and the 1979 zoning ordinance determined has declared that used to be now a special use. That the, that the use that pre exists the zoning ordinance is automatically deemed to be a special use. Hopefully that makes sense. What that what that means. In this case, plaintiff's use of the property does not pre exist the 1979 zoning ordinance. It started in year 2018, according to plaintiff. Moreover, it's use, whether you deem it to be a tree service or a contractor shop or a contractor's retail shop is not now classified in the zoning ordinance as a special use. So, the whole idea that somehow a retroactive special use is automatically applied to this use doesn't make sense. The reference was to, in fact, commercial use of the property back to 1956 through the aerial photos that were shown. That's the reference to the fact that it has been for decades used as commercial property was the reference to the use not specific to Tomax itself. I know Westmont's position was that the photographs were too blurry. That was in the hearing, but in fact, it was the position that the property was, in fact, used as commercial property, not specific to Tomax. At least that record was clear on, but go ahead. I think you're right in that regard. There's an assertion that the property had been continuously used as a contractor shop since 1956. But to be honest, there was no evidence of that. No competent evidence of that. What I think plaintiff may be alleging is that the evidence or are you saying that the evidence, it does exist, but it's not competent. What is that? Well, let me try to answer it this way. I think the plaintiff is asserting that the outdoor storage use of commercial vehicles, that that use has occurred since 1956. And if that's true, let's assume that's true. What the section that plaintiff is relying on says is that if the outdoor storage of commercial vehicles is now classified as a special use, that outdoor storage use that preexists the zoning ordinance is automatically deemed to be an approved special use. The problem with the argument is that the village does not, in the 1979 zoning ordinance, which is what we're dealing with, say that the outdoor storage of commercial vehicles or equipment or products is a special use in the B2 district. So there can be no legislative special use granted based on the historical operations on the property. The related argument that plaintiff makes is that regardless of that section 4.01B3, that it, under Article 12, operates as a legal nonconforming use. And again, I think that plaintiff simply misinterprets or tries to stretch what section 12.02G states. I think there's no evidence in the record as to what uses previously existed on the property. There's an obituary that was entered into evidence, and there were some periodic aerial photographs, but no witness could testify what business operated on the property prior to 1982 when we know what was operated, a special use permit was granted by ordinance by the village for a non-ferrous metal operation business that engaged in metal recycling repurposing. So any prior uses of the property stopped, and a new use was introduced in 1982, a non-ferrous metal business. That use stopped once plaintiff started operating its tree service business. So we've had these changes of uses over the years. This is not a continuation of a legal nonconforming use. This is the introduction of a brand-new use, and the hearing officer found the arguments in this regard, I think his quote was, confused and confusing, the circuit court agreed, and I just don't think there's any way this court can say, yes, there is sufficient evidence to establish a legal nonconforming use that has continued through Tomex's use of the property. Let me ask you this, Mr. Semenuk, very quickly. Following your argument that there was apparently a special use permit for this non-ferrous contract business, correct? Correct. By Westmont. Is there anything to prevent the application by the tree service for a special nonconforming use in the instant case here? They could not apply for one. What their option is, is to say, go to the village and say, is my use allowed? If it's not allowed, they can process a zoning ordinance text amendment to add a tree service business as a permitted use or as a special use in the B-2 zoning district. They never did that. They just showed up and started operating. Okay, so there is a remedy in effect. There was a remedy that they did not pursue. Well, I'm asking now, is there still a remedy or is it, or is there's a scheme, the system of Westmont now preventing that application process? No, anyone can apply for a zoning ordinance text amendment. Thank you. Okay. The final violation is the. Justice Davenport, any additional questions? None, thank you. All right, Mr. Thank you, Mr. Thank you, I'm going to pick up where justice Holdridge left off this question about whether we need to. Pursue a text amendment is that option available? It's not necessary. 12, I'm sorry section 11 dash 13 dash 14. Of the municipal code plainly says it requires an ordinance. Following a hearing process to amend the text of your zoning ordinance. That did not happen in 1982 when contractor shops disappeared. We're a contractor shop. Mr. I'm sorry, the village's position. That if your particular use isn't on that list of 100 and some odd uses today. You're excluded contractor shops are there. Are plumbers there. Our electricians, their painters. No. They're not, it is a, an intentionally broad category because. You can't possibly legislate every type of contractor shop into a zoning ordinance. It's an impossibility. And when there is a broad category of use, the rule is. When you make an exception, such as landscape contractors office. That use is then carved out of the larger, broader category. That's how it works with these use lists. And we've cited authority to that proposition. There's a question about continuity of use that was raised during. The village's response. To say that there's no competent evidence of use since the 1950s is incorrect. The village did not have the 1979 ordinance. It certainly didn't have the ordinance in effect in the 1950s. It didn't have permits and certificates of occupancy. What do you have in the record? You have deeds. Mortgage instruments that represent. Clarence blocker and his brother blocker brothers. As an entity. You have reports from the Illinois secretary of state's office. And yes, you do have an obituary. And we cite authority to the effect that obituaries can be considered. In this instance. To establish a scope of time and circumstances related to the party, the deceased. That happens. Obituaries are used in these cases. So to suggest that there's no evidence or competent evidence is, is just incorrect. I don't. Really like hearing that I'm trying to sow confusion. The fact of the matter is there are so many things wrong with this case. That no matter which alley you take. The use should be protected. The use should be protected. First of all, under the 1979 zoning ordinance. This legislative grant of a special use was for a contractor shop. The contractor shop was a special use under the 79 ordinance. And that special use is not eliminated by an amendment. That makes it a permitted use. Especially you stays on the books. It's only when someone stops a use as a contractor shop. That the special use is forfeited. And then you fall back to the terms of the ordinance, which then still included contractor shops. What happened with the 1982 specially used for non-ferrous metal recycling. Let's think about that for a minute. And I'll give you an example. If I have a restaurant.   As a principal use. The most common practice is. If that restaurant is going to have a drive-thru that requires a special use. It doesn't forfeit the restaurant use. The drive-through gets the special use. The testimony in the record is clear from, from Tom Jones testimony that. He was involved in more than non-ferrous metal recycling. Non-ferrous metal recycling is our tin cans. That's where we took all our bags of recyclables. He also brought in building metals iron. So he was more than non-ferrous. It was non-ferrous component that brought all the people into recycle that made the difference. If you read it, it's page 32 of our brief. If you read the definition of. Off-street parking and of loading. You'll see that the characterization of loading as being for commercial goods is simply incorrect. Loading can be for. Goods used in a service just as much as commercial goods. It's not for loading and unloading things that you sell only. People that have loading zones may have to unload equipment. That yard is an area where the, the equipment was, was loaded into trucks. These are, these are trucks that are used in tree cutting. Now, if you think about the record. The only things that were outdoors. That they claim were storage. Were the vehicles. And a cube that was used to dispose of waste. That's all that's in the record. So there shouldn't be a violation of the outdoor storage issue and. I'll just say that. You, if you read 12.02 G2 and I'll wrap it up with this. The non-conforming use protection did apply to us. And in fact, when Mr. Zeman X says it's not in a fully enclosed building, 12.02. Two G2 as worded says. The use can continue provided that it's enclosed in a fence. That's the language and it is enclosed in a fence. I submit to you that there's a lot here. I appreciate the time you've spent on it. This is one of those cases where, as you work into the fines, I think you can, you can take a look at the difference between how. Fines were proven. And in this case, you needed affirmative conduct to base a fine on something. But there's so much wrong in this case that it needs to be reversed. Thank you so much. The court thanks both sides for their arguments. We'll take the matter under advisement and render a decision in due course. Court is adjourned until the next oral argument. Thank you. Great. Thank you.